**AYLA IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

KAYLA LOPO,

      **Plaintiff,**

**v.**

**ASHLEY FURNITURE
INDUSTRIES, LLC**

      **Defendant.**

**CASE NO.:**

## DEFENDANT'S NOTICE OF REMOVAL

Defendant, ASHLEY FURNITURE INDUSTRIES, LLC, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, respectfully files this Notice of Removal giving notice it is removing this civil action to the United States District Court for the Middle District of Florida, Tampa, Division.  In support of this Notice of Removal, Defendant states as follows:

## I.   PROCEDURAL HISTORY

1.   On or about August 31, 2023, Plaintiff Kayla Lopo ("Plaintiff"), filed a Complaint in the Circuit Court of the 13th Judicial Circuit in and for Hillsborough County, Florida, entitled *Kayla Lopo v. Ashley Furniture Industries*, designated Case No. 23-CA-014927, (the "State Court Action"), wherein she alleges gender discrimination and retaliation under the Florida Civil Rights Act,

Chapter 760 *et seq.* ("FCRA").

2.      Pursuant to 28 U.S.C. § 1446(a), a copy of the Summons and Complaint as well as true and legible copies of all other papers on file in the State Court Action are attached hereto as **Exhibit "A."**

3.      The Complaint was served on September 5, 2023.  Accordingly, this Notice of Removal has been filed within thirty (30) days after service of the Complaint in the State Court Action.  This constituted Defendant's first legal notice of the State Court Action for purposes of removal.  Thus, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

4.      Because Plaintiff brought this lawsuit in the Circuit Court of the 13th Judicial Circuit in and for Hillsborough County, Florida, the Tampa Division of the United States District Court for the Middle District of Florida is the proper forum for removal.    *See* 28 U.S.C. §§ 89(b), 1441(a).

5.      This case is a civil action that may be removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 because it is an action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## II.    DIVERSITY OF CITIZENSHIP

6.      To qualify for diversity jurisdiction under 28 U.S.C. § 1332, there must be complete diversity between the parties, which means no plaintiff may be a

citizen of the same state as any defendant. *See Pease v. Medtronic, Inc.*, 6 F. Supp. 2d 1354, 1356 (S.D. Fla. 1998) (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), overruled on other grounds by *Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000)).

7.      In the Complaint, Plaintiff alleges she resides in Florida. *See* Compl. ¶ 8. Plaintiff worked for Defendant in Florida. *See* Compl. ¶ 10. Plaintiff provided Defendant with a Florida address on her employment documents, throughout her employment with Defendant. Additionally, Plaintiff owns property in Hillsborough County, Florida, for which she has claimed a homestead exemption. Plaintiff is also a registered Florida voter. A collection of documents demonstrating Plaintiff's Florida residence is attached as composite **Exhibit "B."**

8.      Based on the foregoing, Plaintiff is a citizen of the State of Florida for purposes of this Court's diversity jurisdiction under 28 U.S.C. § 1332, as her "domicile" or the "place of [her] true, fixed, and permanent home and principal establishment . . . to which [she] has the intention of returning whenever [she] is absent therefrom" is Florida. *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (finding plaintiff was a citizen of Florida for the purpose of diversity jurisdiction when the plaintiff owned property in Florida, was an owner of a business in Florida, and had a driver's license in Florida); *see also Mock v. UnitedHealthcare Ins. Co.*, No. 6:17–cv–46–Orl–37TBS, 2017 WL 7731956, at

*1 (M.D. Fla. Feb. 1, 2017).

9.    Pursuant to 28 U.S.C. § 1332, "a limited liability company is a citizen of any state in which a member of the company is a citizen." *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).

10.    Defendant, Ashley Furniture Industries, LLC is, a Wisconsin limited liability company with its principal place of business at One Ashley Way, Arcadia, Wisconsin. The Declaration of Troy Muller is attached as **Exhibit "C."**

11.    The sole member of Ashley Furniture Industries, LLC is Ashley Holdings, Inc., a Wisconsin corporation with its principal place of business at One Ashley Way, Arcadia, Wisconsin. *Id.*

12.    Accordingly, Ashley Furniture Industries, LLC. is a citizen of Wisconsin for purposes of determining diversity. Accordingly, for purposes of 28 U.S.C. § 1332(a)(1), diversity jurisdiction exists between Plaintiff, a citizen of Florida, and Defendant, a citizen of Wisconsin, at the time of filing this Notice of Removal.

### III.    AMOUNT IN CONTROVERSY

13.    Pursuant to 28 U.S.C. § 1332(a)(1), diversity jurisdiction also requires the amount in controversy to "exceed the sum or value of $75,000.00."

14.    Plaintiff's Complaint alleges damages exceeding $30,000.00,

exclusive of interest, costs, and attorneys' fees.  Where the initial pleading does not demand a specific sum, the notice of removal may assert the amount in controversy. 28 U.S.C. § 1446(c)(2)(A). Construing 28 U.S.C. § 1446(a), which requires "a short and plain statement of the grounds for removal," the U.S. Supreme Court has held that a removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and need not submit evidence in support thereof.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

15.     In assessing the amount in controversy, the Court considers the value of the plaintiff's claims by estimating the amounts that "will be put at issue during the litigation," and *not* how much plaintiff is ultimately likely to recover.  *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014); *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (explaining "the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover") (emphasis in original) (citation omitted).  In conducting its analysis, the Court may rely upon its "judicial experience and common sense," rather than a plaintiff's self-serving representations that the value of her claims is indeterminate.  *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir.

2010).

16.     "[The] Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010) (internal quotation marks omitted). Thus, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements. *Id*. at 1062.

17.     Courts may also consider jury verdicts rendered in matters raising similar claims and injuries. *See, e.g., Payne v. J.B. Hunt Transp., Inc.*, 154 F. Supp. 3d 1310, 1314 (M.D. Fla. 2016) (reviewing evidence of settlements and jury verdicts together with the allegations of plaintiff's complaint to conclude "it [was] more likely than not that the amount in controversy exceeds $75,000."); *Gardner v. Mgmt. & Training Corp.*, 2014 WL 3039335, at *2 (N.D. Fla. July 3, 2014) (considering proffered jury verdict research in determining whether the amount in controversy exceeds $75,000); *Alshakanbeh v. Food Lion, LLC*, 2007 U.S. Dist. LEXIS 20746, at *4-7 (M.D. Fla. Mar. 23, 2007) (considering information from defendant based upon defendant's review of published jury verdicts and damages awards involving claims similar to plaintiff's in determining the requisite $75,000 minimum had been established); *see also Schmidt v. Pantry,*

*Inc.*, 2012 WL 1313490, at *3-4 (N.D. Fla. Mar. 6, 2012) (considering jury verdicts from other Florida courts when determining emotional distress damages in an employment discrimination case exceeded the amount in controversy requirement). Importantly, "[a] removing defendant is *not* required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Payne*, 154 F. Supp. 3d at 1313 (internal quotation marks omitted; emphasis added) (citing *Pretka*, 608 F.3d at 754).

18.    A plain reading of Plaintiff's Complaint, together with the jurisdictional allegations herein, demonstrates the amount in controversy exceeds the sum of $75,000.00, and thus, meets the jurisdictional amount required for removal based on diversity. *See* 28 U.S.C. § 1332(a).

19.    Specifically, Plaintiff alleges she held the position of "Quality Supervisor" at the time of her termination in February 2022. *See* Compl. ¶ 10.

20.    Plaintiff seeks damages, including (but not limited to) back pay and benefits, front pay and/or lost earning capacity, compensatory damages, and attorneys' fees and costs. *See* Compl., Wherefore Clause.

21.    As to lost wages, back pay should be calculated from the time of the alleged adverse employment action through the date of trial. *Pope v. 20/20 Commc'ns, Inc.*, No. 8:15-cv-1774-30JSS, 2015 WL 5165223, at *2 (M.D. Fla. Sept. 2, 2015) (back-pay damages calculated through proposed date of trial);

*Hendry v. Tampa Ship, LLC*, No. 8:10-cv-1849-T-30TGW, 2011 WL 398042, *2 (M.D. Fla. Feb. 4, 2011) ("Back pay is generally calculated from the date of the adverse employment action to the date of judgment."); *Morgan v. Sears, Roebuck & Co.*, No. 12-60055-CIV, 2012 WL 2523692, at *2 (S.D. Fla. June 29, 2012) (calculating back pack from time of termination through expected trial date, noting that court may use its "judicial experience and common sense" in making that determination); *Penalver v. N. Elec., Inc.*, No. 12-80188-CIV, 2012 WL 1317621, at *2 (S.D. Fla. Apr. 17, 2012) (calculating back pay from termination through the "first possible trial date"); *Messina v. Chanel, Inc.*, No. 10-24518-CIV, 2011 WL 2610521, at *2 (S.D. Fla. July 1, 2011) (including back pay through estimated time of trial eighteen months in the future).   Indeed, the Eleventh Circuit has approved calculating back pay through the estimated time of trial for purposes of the amount in controversy. *See Wineberger v. RaceTrac Petroleum, Inc.*, No. 5:14-cv-653-Oc-30PRL, 2015 WL 225760, at *3 (M.D. Fla. Jan. 16, 2015) (calculating back pay from termination through estimated trial date of twenty-four months after complaint was filed, along with front pay of one year), *aff'd by Wineberger v. RaceTrac Petroleum, Inc.*, 672 F. Appx. 914, 917 (11th Cir. 2016) (approving same).

22.     At the time of Plaintiff's termination, Plaintiff earned an hourly rate of $24.90 an hour.

23.     Thus, Plaintiff's lost wages from the time of her termination on February 22, 2022 through present (approximately 84 weeks) is approximately **$83,664** ($996.00 x 84 weeks). According to Federal Judicial Caseload Statistics from March 2022, the median time interval from filing to disposition through trial for civil cases in the Middle District of Florida is well over one year.[1] Conservatively adding one year (52 weeks) to the back pay calculation to account for the time through trial, Plaintiff's lost wages for purposes of removal are **$135,456** ($1,153.85 x 136 weeks).

24.     Although front pay, compensatory damages, and attorneys' fees all can be considered to determine the amount in controversy for diversity jurisdiction, this Court need not undergo this analysis as the amount in controversy threshold is easily satisfied solely by Plaintiff's potential for back pay.  In the event the Court wishes to evaluate these available damages, however, such damages further demonstrate the requisite amount in controversy has been satisfied.[2]

---

[1] *See* UNITED STATES COURTS, *Federal Judicial Caseload Statistics 2022 Tables* T-3, (last updated March 31, 2022), https://www.uscourts.gov/federal-judicial-caseload-statistics-2022-tables (reflecting 34.4 months as the median time interval from filing to disposition through trial for civil cases in the Middle District of Florida).

[2] Courts may consider potential front pay, compensatory damages, as well as attorneys' fees (all of which Plaintiff seeks to recover) to determine whether the amount in controversy has been met to support diversity jurisdiction. *See* Compl., Wherefore clause. *See also Wineberger*, 672 F. App'x at 917 (approving inclusion of front pay in amount in controversy calculation under FCRA); *Awad v. Cici Enterprises*, 2006 U.S. Dist. LEXIS 71998, at **3-4 (M.D. Fla. Oct. 3, 2006) (compensatory and punitive damages and attorneys' fees included in amount in

25. The amount in controversy is further established by Plaintiff's pre-suit settlement demands, which reflect a demand of $100,000.00. *See Knorpel v. Nat'l Specialty Ins. Co.*, No. 23-CV-60675-RAR, 2023 U.S. Dist. LEXIS 75493, at *5 (S.D. Fla. Apr. 30, 2023) ("Courts are permitted to look to "other papers," including pre-suit demand letters, when adjudicating the amount in controversy for removed cases"). Plaintiff's April 5, 2023 demand letter contains an itemization of damages, totaling $300,000.00.[3] *See* April 4 demand letter, attached hereto as **Exhibit "D."** Plaintiff's calculation of damages in her demand letter makes the letter probative evidence for purposes of removal analysis. *See e.g. Maxon v. Home Depot USA, Inc.*, No. 8:22-cv-2650-CEH-AEP, 2023 U.S. Dist. LEXIS 17050, at *6 (M.D. Fla. Feb. 1, 2023) ("demand letters that provide specific details to support the demanded amount are much more likely to satisfy a defendant's burden"). Furthermore, Plaintiff's civil cover sheet reflects that the amount in controversy exceeds $75,000.00 *See* Exhibit A p. 1.

26. District courts routinely include compensatory damages in the form of pain and suffering, such as Plaintiff claims in this case, in the jurisdictional amount as well. *See Estevez-Gonzalez v. Kraft, Inc.*, 606 F. Supp. 127, 129 (S.D. Fla. 1985) (including unspecified amount of compensatory damages for "physical

---

controversy in diversity cases); *Penalver*, 2012 WL 1317621, at *3 (including reasonable attorney's fees in amount of controversy calculation).

[3] Plaintiff's calculation of $150,000.00 for potential back pay damages through trial does not

and mental pain, physical handicap, impairment of working ability, injuries permanent or continuing in nature, and medical expenses"); *Bartley v. Starwood Hotel & Resorts Worldwide*, *Inc.*, No. 07-80637-CIV, 2007 WL 2774250, at *1 (S.D. Fla. Sept. 24, 2007) (finding the complaint "clearly established" amount in controversy based, in part, on general allegations of pain, mental anguish, scarring, disfigurement, loss of enjoyment of life, medical expenses, etc.). *Wineberger*, 2015 WL 225760 at *4, *aff'd by Wineberger*, 672 F. Appx. at 917 (including emotional distress damages in the range of $5,000-$30,000 under the FCRA for purposes of calculating the amount in controversy, when the complaint merely alleged emotional distress in the nature of "that which would have been experienced by most individuals suddenly terminated from their jobs for unsavory reasons.") Additionally, the Eleventh Circuit has held objective medical testimony is not necessary to support an award of emotional distress damages under FCRA, and plaintiff's lay testimony concerning the emotional impact of illegal termination was itself sufficient to support such award. *See Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1348-49 (11th Cir. 2000) (affirming jury award of $150,000 for emotional distress caused by illegal termination under FCRA). Thus, to the extent Plaintiff purports to seek emotional distress damages, and has itemized them as $50,000, the Court should utilize that amount to include in the

substantially deviate from Defendant's calculations of $135,456 herein.

4875-0919-4627.2 / 615000-3268

11

amount in controversy calculation. This does not include potential recovery for punitive damages, calculated at 50,000 by Plaintiff, which further increases the amount in controversy for the purposes of diversity jurisdiction. *See Wineberger*, 2015 WL 225760 at \*4 (considering punitive damages under the FCRA in determining amount in controversy).

27.     Adding Plaintiff's claim for attorneys' fees, which are recoverable under the Florida Civil Rights Act, to the amount in controversy calculation, which Plaintiff has itemized as $50,000, there is no question the amount in controversy significantly exceeds $75,000.00. *See Penalver*, 2012 WL 1317621 at \*3 (including reasonable attorney's fees in amount of controversy calculation).

28.     Because the amount in controversy clearly exceeds $75,000.00, exclusive of interest and costs, and the action is between citizens of different states, the District Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a).  Thus, this case may be removed to this Court by Defendant pursuant to 28 U.S.C. §§ 1441 and 1446.

## IV.   **NOTICE AND TIMELINESS**

29.     Finally, this Notice of Removal has been given to Plaintiff and has been filed with the Clerk of the Circuit Court of the Second Judicial Circuit in and for Gadsden County, as required by 28 U.S.C. § 1446(d).  A copy of the Notice of Filing Notice of Removal is attached hereto as **Exhibit "E."**

30.    The required filing fee of $400.00 and an executed civil cover sheet accompany this Notice.

WHEREFORE, Defendant respectfully removes this action, pending in the Sixth Judicial Circuit Court of Pinellas County, Florida to the United States District Court in the Middle District Court of Florida, Tampa Division.

Dated this 4th day of October, 2023.        Respectfully submitted,

/s/ West A. Holden
Jessica T. Travers
Florida Bar # 018129
jtravers@littler.com
West Holden
Florida Bar #113569
wholden@littler.com

LITTLER MENDELSON P.C.
111 North Orange Avenue
Suite 1750
Orlando, FL  32801.2366
Telephone: 407.393.2900
Facsimile:  407.386.9081

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th of October, 2023, by using the CM/ECF system and a correct copy of the foregoing has been furnished electronic mail to:

**Jason W. Imler, Esq.**
**Inler Law**
**23110 State Road 54, Unit 407**
**Lutz, Florida 33549**
**Jason@ImlerLaw.com**

*/s/ West Holden*
West Holden